### STERN v. BARRETT CHEMICAL CO.

(City Court of New York, General Term. June 29, 1899.)

1. LIBEL—PUBLICATIONS CONCERNING ANOTHER'S BUSINESS.
    The use by plaintiff, on his labels of an insecticide, of the words "Warranted Chemical Roach Salt," employed as indicating a chemical process of manufacturing, is not an infringement on defendant's alleged trade-mark, "Roach Sault," used on his labels, so as to justify the publication by defendant of libelous letters concerning plaintiff in his business.

2. TRIAL—INSTRUCTIONS—FAILURE OF DEFENDANT TO EXCEPT.
    Where the defendant in an action to recover damages for a libel failed to except to a charge giving the jury the right to fix the compensation if they

should determine the act to have been a libel, he cannot complain on appeal.

Appeal from trial term.

Action by Julius Stern against the Barrett Chemical Company to recover damages for libel. From a judgment entered on a verdict for plaintiff, and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before CONLAN, SCHUCHMAN, and HASCALL, JJ.

William S. Beaman, for appellant.
Arthur Furber, for respondent.

CONLAN, J. The action was brought to recover damages for a libel alleged to have been published by defendant of and concerning the plaintiff in his business of manufacturer and dealer in an insecticide, and the libel complained of was contained in a letter signed by the defendant to dealers in such articles, claiming that the plaintiff was unlawfully placing the word "Roach Sault" on his labels; and, to be more particular, we give the following exact quotation from the circular issued and sent out by the defendant to persons who were dealing in the article manufactured by the plaintiff:

"It has recently come to our knowledge that our business word and trademark, 'Roach Sault,' is being unlawfully placed upon the labels, &c., of an insecticide, with the preparation and sale of which article we have no connection whatever. Confident that all honest and fair-minded dealers will sustain us in our position against such robbery of our property (our trade-mark word), we nevertheless desire to give everybody notice that we shall hold responsible, both civilly and criminally, all parties who deal in or keep any insecticide which is put up or sold under any name or label which includes our word, 'Roach Sault,' or any imitation of that word. We call attention to the following extracts from the Penal Code of the state of New York. Very respectfully yours,     Barrett Chemical Co.,
"C. H. Higbee, Gen. Manager."

And there was inclosed in said letter, and as a part of the publication thereof, extracts from the Penal Code relating to the alleged offense and the punishment thereof, with a specific and independent line inserted therein in small capitals, as a distinguishing feature thereof, containing the words "is guilty of misdemeanor."

It is admitted that some 17 or 18 of these circulars or letters were sent out by the defendant to prominent dealers in the city of New York, and it is claimed by the plaintiff that in consequence thereof he was damaged in his business by reason of this false publication. There is evidence that the persons receiving these circulars or letters refused further to deal in the article manufactured by the plaintiff, and his business was therefore necessarily interfered with.

A comparison of the labels used by the parties fails to disclose any similarity whatever, either in size, general makeup, color, or other matter prominent thereon; and it does not very clearly appear that any person could be deceived into believing that, by the purchase of the article of the plaintiff, covered by his label, he was

using, or intended to purchase or use, the article manufactured by the defendant company. Upon the defendant's label the most prominent characteristic is the word "Roach Sault," in the use of which, it is insisted by the defendant, it was protected under the laws of the United States. Upon the top of plaintiff's label are the words "Warranted Chemical Roach Salt," employed as indicating a chemical process of manufacturing; and upon the employment of these two terms, the word "Roach Sault" by the defendant, and "Warranted Chemical Roach Salt" by the plaintiff, seems to hinge all that is material for consideration in this branch of the case, as presented for review. The question, therefore, for us to consider, is, had the defendant such an exclusive ownership in the term or words "Roach Sault" as would justify the publication complained of? We are cited by counsel for both parties to a long line of authorities which it is insisted are controlling upon the questions which are presented for our review. It will be noticed that the plaintiff's labels contained the two words "Roach Salt" in conjunction with the other words, "Warranted Chemical," while that of the defendant simply employed the word or term, or whatever else it may be called, "Roach Sault," the spelling of the one differing from that of the other, and the latter embracing but a single word, while the former was made up of two separate words. The words "roach" and "salt" are well-known words in the English language, and each has a distinct definition and meaning, and we do not see on what authority the plaintiff can be interfered with in their use or employment; nor could the plaintiff prevent their employment by the defendant to designate any article for public or private use. In this connection it is important to consider the language of Chief Justice Folger in Caswell v. Davis, 58 N. Y. 223:

"It is the result of all the decisions that known words and phrases, indicative of quality and composition, are the common property of all mankind. They may not be appropriated by one to mark an article of his manufacture, when they may be used truthfully by another to inform the public of the ingredients which make up an article made by him. Even when the sole purpose of the one who first uses them is to form of them a trade-mark for himself, if they do in fact show forth the quality and composition of the article sold by him he may not be protected in the exclusive use of them."

Language could hardly be stronger than that we have just read, and, in its light, we can scarcely conceive how the employment or use of the phrase "Warranted Chemical Roach Salt" in any way infringed anything which the defendant has disclosed as being something in which he had, or could have acquired, exclusive property. We are thus led irresistibly to the conclusion that the language of the circular or letter issued by the defendant was a libel of the plaintiff's business, and under the charge of the learned trial judge that, if the defendant was not protected by its alleged trade-mark in the word "Roach Sault," a complete recovery could be had in this form of action for all of the consequences which necessarily followed the defendant's act, and under the charge of the trial court to the jury: "If you determine this to have been a libel, you are to judge from the various circumstances surrounding the case whether the plaintiff would have continued in the

sale of this article of his to the various persons in the trade, such as Macy and others, but for the issuance of this letter by the defendant; and you are to award such damages as in your judgment will compensate the plaintiff, if you believe there was a libel,"— we think the whole question was fairly submitted to the jury, and the defendant cannot now be allowed to complain because of its failure to except thereto. It thus became the province of the jury, with the assent of the defendant, to fix the amount of compensation; and we are unwilling to say that the jury have acted unreasonably, or for any reason to the prejudice of the defendant, in assessing the damages at the sum of $1,500. We are of the opinion, therefore, that the judgment and order appealed from should be affirmed, with costs. All concur.